UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nicole L.,[1]

               Plaintiff,                          Case No. 20-cv-2326 (MJD/LIB)

      v.                                    **REPORT AND RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

               Defendant.

Plaintiff, Nicole L. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

This Court has jurisdiction over the claims under 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 21, 23], and the Court took the matter under advisement on the written submissions.

For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 21], be **DENIED**, and that Defendant's Motion for Summary Judgment, [Docket No. 23], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I.  Procedural History

On January 21, 2018, Plaintiff filed an application for supplemental security income. (Tr. 10, 261–66).[2] Plaintiff alleged that her disability began on March 23, 2000. (Tr. 10, 261). The Commissioner initially denied Plaintiff's present claims on March 22, 2018, and again, upon reconsideration, on July 3, 2018. (Tr. 10, 101–40). On July 20, 2018, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 10).

Administrative Law Judge Micah Pharris (hereinafter "ALJ") conducted an initial hearing on December 12, 2019, and a supplemental hearing on April 1, 2020. (Tr. 10, 33–100). At both hearings, Plaintiff was represented by her attorney, James Greeman. (Tr. 10, 33–100). During these hearings, the ALJ heard testimony from Plaintiff; Dr. Jared Frazin, M.D., an independent medical expert, (hereinafter "Dr. Frazin"); and an independent vocational expert, Amy Kutschbach (hereinafter "IVE Kutschbach"). (Tr. 10, 33–100). On April 14, 2020, the ALJ issued a decision denying Plaintiff's request for supplemental security income. (Tr. 7–23). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 23).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–6). Subsequently, on September 21, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Thus, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 20], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 76 exhibits. (See, Administrative Record [Docket No. 20]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

On November 13, 2020, Plaintiff filed the present action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 21, 23], and the Court took the matter under advisement on the written submissions.

## II.  Standards of Review

### A.  Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B.  Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20

C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In the present case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled, (Tr. 1–6), thus making the ALJ's decision the final decision of the Commissioner.

### C.  Judicial Review

This Court's judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see, Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the

Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision (through the ALJ), the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior relevant work because of a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

## III. Decision Under Review in the Present Case

Before beginning the five-step disability evaluation process, the ALJ was first required to determine the relevant time period under consideration. Although Plaintiff here alleged that her disability began on March 23, 2000, Plaintiff previously filed an application for disability

benefits on September 24, 2002, which was apparently denied by the Commissioner on March 11, 2010.[3] The ALJ interpreted Plaintiff's assertion of a March 23, 2000, alleged onset date in the present application as an implicit request to reopen the Commissioner's prior determination. (Tr. 10). The ALJ denied Plaintiff's implicit request to reopen the previous determination. (Tr. 10). Thus, the ALJ determined that the relevant time period for Plaintiff's present application "is from her current application date of January 21, 2018, though the date of [the ALJ's] decision." (Tr. 10). This finding is not in dispute.[4]

The ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engage in substantial gainful activity since January 21, 2018, her application date. (Tr. 12). This finding is not in dispute. The Court will refer to the time period between the date Plaintiff last engaged in substantial gainful activity and the date of the ALJ's decision as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairment: Schizoaffective disorder; ADHD; Anxiety disorder; Bipolar disorder; PTSD; Chronic pain syndrome; Rheumatoid arthritis; Fibromyalgia; Degenerative disc disease of the cervical and lumbar spine; Asthma; Obesity; Migraine headaches; Obstructive sleep apnea; and Degenerative joint disease of the lower extremity." (Tr. 12). Plaintiff does not challenge the finding made by the ALJ at step two.

---

[3] Neither this September 24, 2002, application not the corresponding March 23, 2000, decision is at issue in the present action.
[4] In fact, Plaintiff appears to have made at least some effort prior to the ALJ's decision to amend her alleged onset date to be January 21, 2018. In a form dated, January 12, 2019, Plaintiff requested to amend her alleged onset date to January 21, 2018; however, it is not evident when or where this form was submitted, and it does not appear that the Social Security Administration took any action upon Plaintiff's request. (See, Tr. 272).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13–16). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listing 1.02, 1.04, 3.03, 11.02, 12.03, 12.04, 12.06, 12.11, 12.15, or 14.09. (Tr. 13–16). Plaintiff does not challenge the ALJ's finding here at step three.

At step four, the ALJ made the following RFC determination:

[C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the individual may frequently operate foot controls. The individual may never climb ropes, ladders, or scaffolds; and may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The individual may frequently reach in all directions and may frequently handle and finger. The individual may have no exposure to extreme cold, vibration, concentrated levels of airway irritants, unprotected heights or hazards. The individual would need to use a cane while walking but not while standing in place. The individual is limited to simple routine repetitive tasks at a nonproduction pace.

(Tr. 16). Plaintiff does challenge this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however," the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 17). Plaintiff does not specifically challenge this credibility finding by the ALJ.

Based on his RFC determination and relying on the testimony from the independent vocational expert, IVE Kutschbach, the ALJ found that Plaintiff was unable to perform her past relevant work. (Tr. 21). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform." (Tr. 21). Relying upon testimony from independent vocational expert Amy Kutschbach, ("IVE Kutschbach"), the ALJ specifically found that among the occupations Plaintiff would be able to perform were "assembler" of which there are 11,000 positions in the national economy; "inspector" of which there are 37,000 positions in the national economy; and "sorter" of which there are 10,000 positions in the national economy. (Tr. 21–22).[5] Plaintiff does not directly challenge the ALJ's findings at step five, other than as an implicit derivative challenge based on Plaintiff's aforementioned challenge to the ALJ's RFC determination.

The ALJ therefore found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 22–23).

## IV. Analysis

Plaintiff raises a single overarching issue on her appeal of the ALJ's decision: the ALJ's RFC finding is not supported by substantial evidence because it fails to incorporate her "reasonably anticipated absenteeism" and becuase it fails to account for "immunocompromised status" in light of the COVID-19 pandemic. (Plf.'s Mem. [Docket No. 22]). In other words, Plaintiff contends that the ALJ's RFC finding should have included limitations accounting for

---

[5] In making this determination, the ALJ overruled Plaintiff's previous objection which the ALJ described as an objection to IVE Kutschbach's methodology for determining the number of positions in the national economy for each prospective occupation. (Tr. 22). Specifically, Plaintiff objected arguing that the opined number of positions for each prospective occupation failed to account for the recent coronavirus outbreak. The ALJ overruled this objection noting that IVE Kutschbach provided testimony based on her professional knowledge and experience, and IVE Kutschbach testified that even if the number of positions had been altered by the circumstances of the coronavirus outbreak the numbers would be at her opined levels "within a matter of a few months." (Tr. 22). The ALJ further noted that although the "current outbreak has caused a recession," such a circumstance "is precisely one of the 'cyclical economic conditions' that" the Commissioner (through the ALJ) does "not consider when ascertaining work that exists in the national economy." (Tr. 22) (citing 20 C.F.R. § 416.966(c)(5)). Plaintiff does not here specifically challenge the ALJ's overruling of Plaintiff's objection at the administrative hearing.

her being absent from work "at least several times per month" and "included a limitation that she perform work activity from a home." (Id. at 12–15). In support of absenteeism related contention, Plaintiff points to the number of medical appointments she attended during the adjudicated period, as well as, her own self-reported issues with "fatigue and excessive sleepiness . . . ." (Plf.'s Mem. [Docket No. 22] at 13) (citing Tr. 468,[6] 475, 945, 1027, 1044). In support of her argument that the ALJ's RFC finding should have limited her to working at home, Plaintiff relies on her own testimony at the April 1, 2020, administrative hearing at which she testified that "she was on multiple medication for rheumatoid arthritis that compromised her immune system," as well as, general guidance from the Center for Disease Control regarding the COVID-19 virus. (Plf.'s Mem. [Docket No. 22] at 14–15). Plaintiff argues that if the ALJ would have properly included the absenteeism and immunocompromised related limitations, then it would have caused a substantially more limited RFC finding. (Id. at 13–15).

The Commissioner contends that she is entitled to summary judgment, arguing that Plaintiff's argument is unavailing, and that the ALJ's opinion is supported by substantial evidence in the record. (Def.'s Mem. [Docket No. 24]).

## A. Absenteeism

The Eighth Circuit Court of Appeals has held that a plaintiff's residual functional capacity must be based on her ability to perform the requisite employment tasks on a daily basis for eight hours a day, five days a week. See, e.g., Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991); McCoy v. Astrue, 648 F.3d 605, 617 (8th Cir. 2011). One of the considerations in assessing a plaintiff's residual functional capacity is the effects of said plaintiff's impairments, as well as, "[t]he effects of treatment, including limitations or restrictions imposed by the

---

[6] Plaintiff's memorandum actually cites page 486 of the record rather than page 468; however, page 486 does not contain any reference to fatigue or sleepiness. The Court assumes this was a scrivener's error, and Plaintiff intended to cite to page 468 which does contain Plaintiff's report of difficulties sleeping.

mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p, 1996 WL 374184, at *5. Excessive absenteeism from work resulting from a plaintiff's impairment or need for treatment may constitute evidence that such a plaintiff is unable to perform work on a regular and continuing basis or on an equivalent schedule. See, Baker v. Apfel, 159 F.3d 1140, 1146 (8th Cir. 1998).

In support of her argument that the frequency of her medical appointments necessitated a more restrictive RFC, Plaintiff argues that "[a]bsenteeism from [her] medical appointments alone would interfere with and cause her to miss work at least several times per month. Her care included treatment at a pain clinic several times per month to receive medication monitoring and adjustments, as well as injections and radiofrequency ablations." (Plf.'s Mem. [Docket No. 22] at 12–13). As an illustrative example, Plaintiff highlights the spring of 2018, when she attended appoints at the pain clinic twice in the month of May, twice in June, and once in July while also attending "at least" monthly psychiatric care appointments. (Id.). In other words, Plaintiff argues that the volume and frequency of her medical appointments alone warrants a more restrictive RFC finding.

The Court finds Plaintiff's argument to be unpersuasive. In rejecting this argument, other Courts, including Courts in this District, have noted that if the Court "were to adopt Plaintiff's argument, then any [claimant] could establish disability simply by scheduling monthly doctor's appointments." Jason P. v. Kijakazi, No. 20-cv-688 (TNL), 2021 WL 4483040, at *16 (D. Minn. Sept. 30, 2021) (collecting cases). In rejecting a similar argument, the Tenth Circuit Court of Appeals noted that "plaintiff's current extrapolation of how many days she must have missed from work based on her medical record is faulty" in part "in that it assumes she was required to

miss entire days of work for each appointment." Barnett v. Apfel, 231 F.3d 687, 691 (10th Cir. 2000).

Undoubtedly, the record now before the Court does demonstrate that Plaintiff attended frequent medical appointment; "[n]evertheless, simply because a [plaintiff] requires regular healthcare appointments does not necessarily mean [she] cannot work on the days [she] has appointment, such as by arranging appointments around the work schedule or during breaks, nor even that the [plaintiff] would need to miss an entire work day for an appointment." Morin v. Colvin, No. 4:14-cv-000769-NKL, 2015 WL 4928461, at *9 (W.D. Mo. Aug. 18, 2015); see, Brown v. Saul, No. C18-3071-LTS, 2020 WL 1467044, at *5 (N.D. Iowa Mar. 26, 2020). Instead, if Plaintiff "contends [her] medical appointments would necessarily conflict with a work schedule, it is [her] burden to demonstrate that." Brown v. Saul, No. C18-3071-LTS, 2020 WL 1467044, at *9 (N.D. Iowa Mar. 26, 2020).

In the present case, Plaintiff has not met her burden of demonstrating that the ALJ erred by not including a limitation for absenteeism based solely on the frequency of Plaintiff's medical appointments. "At best, Plaintiff proved how many times she has visited a doctor, but she did not show that each doctor's visit would result in her missing an entire day of work." Jeffries v. Berryhill, No. 4:16-cv-18 (JMB), 2017 WL 365439, at *6 (E.D. Mo. Jan. 25, 2017).

As observed above, Plaintiff also argues that the ALJ's RFC determination should have included a restrictive absenteeism limitation because "[i]n addition to the absences necessitated by her medical appointments alone, the symptoms of [her] impairments, as well as the side effects from her medications, will result in off-task time throughout the workday on the occasions when she is able to be present." (Plf.'s Mem. [Docket No. 22] at 13). Plaintiff contends that "[t]he record is replete with reference to fatigue and excessive sleepiness, due at

least in part to her frequent nightmares and flashbacks related to childhood sexual abuse." (Id.). Here again, Plaintiff's proffer falls well short of her burden of demonstrating that her symptoms and medicinal side effects would sufficiently interfere with a work schedule to necessitate an absenteeism limitation.

Most notably, Plaintiff's citations to the record regarding the symptoms of her impairments, such as fatigue and excessive sleepiness, cite to only her subjective self-reported symptoms. The ALJ, however, found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," and Plaintiff has not challenged this credibility finding by the ALJ. In addition, Plaintiff fails to cite to any evidence in the record regarding "side effect from her medications." (See, Plf.'s Mem. [Docket No. 22]). Moreover, even assuming solely for the sake of argument that Plaintiff does suffer from fatigue and excessive sleepiness, Plaintiff fails to offer any persuasive argument or citation to the record demonstrating the connection between this fatigue and excessive sleepiness and her purported absenteeism. (See, Id.).

This is not a case in which Plaintiff has pointed to any medical evidence or opinion evidence demonstrating she is likely to be absent from work for any significant number of days per month due to her impairment or treatment of said impairments. Cf., Gude v. Berryhill, No. 2:16-cv-79 (SPM), 2018 WL 1470455, at *3–5 (E.D. Mo. Mar. 26, 2018); Ross v. Apfel, 218 F.3d 844, 848 (8th Cir. 2000); Baker v. Apfel, 159 F.3d 1140, 1146 (8th Cir. 1998); Orr v. Chater, 956 F. Supp. 861, 863, 877–78 (N.D. Iowa 1997); Jafari v. Colvin, No. 12-cv-1276 Order [Docket No. 31] at 14–16 (S.D. Ill. July 3, 2014).[7] "Nor is this a case where it is

---

[7] For this reason, Plaintiff's reliance on Baker, 159 F.3d at 1146; Orr, 956 F. Supp. at 877–78; and Jafari, No. 12-cv-1276, is misplaced.

uncontested that Plaintiff's treatment would cause [her] to be absent for the entire day." <u>Jason P. v. Kijakazi</u>, No. 20-cv-688 (TNL), 2021 WL 4483040, at *16 (D. Minn. Sept. 30, 2021) (citing <u>Kim J. H. v. Saul</u>, No. 18-cv-2736 (MJD/TNL), 2020 WL 872308, at *9–11 (D. Minn. Jan. 27, 2020), <u>report and recommendation adopted</u>, 2020 WL 869963 (D. Minn. Feb. 20, 2020); <u>Shoemaker v. Saul</u>, No. 1:19-cv-441, 2020 WL 5117992, at *6 (M.D. N.C. Aug. 31, 2020) ("In this case, Plaintiff has presented uncontested evidence—through her testimony, the medical records of her treating physician Dr. Kishnani, and the medical records of her infusions—that treatment of her Gaucher disease requires infusions every 2 weeks, with appointments generally lasting 3 to 5 hours.")). Instead, this is a case in which the record now before the Court demonstrates only that Plaintiff consistently went to medical appointments.

For the reasons stated above and based on the record now before the Court, the undersigned finds that Plaintiff has failed to meet her burden of demonstrating that the ALJ erred by not including a limitation for absenteeism. Therefore, the Court finds unpersuasive Plaintiff's argument that the lack of absenteeism related limitation in the RFC demonstrates that the ALJ's RFC decision is unsupported by substantial evidence.

**B. Immunocompromised Status**

As observed above, Plaintiff also asserts that "[a]ny RFC that appropriately considered all of [her] limitations should have recognized her particular vulnerability to Covid-19 infection from being in a public work setting, and included a limitation that she perform work activity from a home." (Plf.'s Mem. [Docket No. 22] at 15). In support of this assertion, Plaintiff relies on her hearing testimony where she testified "that she was on multiple medications from rheumatoid arthritis that compromised her immune system . . . ." (<u>Id.</u> at 14). Plaintiff also relies on the Center for Disease Control's general guidance "that those with an immunocompromised

status are particularly vulnerable to infections and complications from" COVID-19, and "the Covid-19 vaccine may not be either safe or effective for those with autoimmune disorders and compromised immune systems." (Id. at 14–15). Under the circumstances of the present case and the legal standard applicable to this case, the Court finds Plaintiff's argument here to be unpersuasive for at least two primary reasons.

First and most notable, Plaintiff fails to cite to any medical evidence or opinion evidence in the record demonstrating that she is of an immunocompromised status. (See, Id.). Instead, Plaintiff relies solely on her own hearing testimony in which she opined that her medications suppressed her immune system. (Id.) (citing Tr. 88). This is an insufficient basis upon which to reasonably conclude that Plaintiff is of an immunocompromised status. As already discussed above, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," and Plaintiff has not challenged this credibility finding by the ALJ. Moreover, Plaintiff's statement that her medications suppress her immune systems is a medical opinion which Plaintiff is not qualified to offer. See, 20 C.F.R. § 404.1502; Social Security Ruling, SSR 06-03p: Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 71 FR 45593-03, 2006 WL 2263437 (2006); 20 C.F.R. § 404.1527 ("Medical opinions are statements from acceptable medical sources"). Plaintiff simply fails to cite to any medical evidence or opinion evidence indicating that she is of an immunocompromised status.

In the recitation of the medical record in her memorandum, Plaintiff does cite to a February 2, 2018, treatment note in which immunosuppressive therapy was rejected as treatment

option due to concerns regarding the "relapse of C. diff." (Tr. 503). This does not, however, support Plaintiff's assertion regarding her immunocompromised status. In fact, it appears from the treatment note highlighted by Plaintiff that "immunomodulatory therapy" remained a possible treatment option. (Tr. 503).

Second, Plaintiff fails to articulate how the present circumstances of the COVID-19 pandemic outside of the adjudicated period demonstrates that the ALJ's RFC decision is unsupported by substantial evidence. (See, Plf.'s Mem. [Docket No. 22]). Plaintiff only generically references "guidance from the CDC" without any discussion of the applicability of that guidance during the adjudicated period. (See, Id. at 14–15). Although her memorandum lacks any detailed discussion, Plaintiff's reliance on the COVID-19 pandemic appears to be based on the present circumstance of COVID-19 pandemic rather than the circumstances during the adjudicated period. (See, Id. at 14) (referencing "new variants"). Thus, Plaintiff's argument related to her purported immunocompromised status and the COVID-19 pandemic is improperly based on evidence outside the adjudicated period during which Plaintiff must establish her alleged disability.

It is undisputed that the adjudicated period during which Plaintiff must establish her alleged disability is from January 21, 2018, through April 14, 2020. (Tr. 10; Plf.'s Mem. [Docket No. 22]). Therefore, to qualify for social security disability benefits here Plaintiff must demonstrate that she was disabled during the period of time after January 21, 2018, and before April 14, 2020. See, e.g., Comegys v. Chater, 105 F.3d 662 (8th Cir. 1997); Laveau v. Astrue, No. 11-cv-505 (SRN/LIB), 2012 WL 983598, at *19 (D. Minn. Feb. 14, 2012), report and recommendation adopted, 2012 WL 983630 (D. Minn. Mar. 22, 2012); Jackson v. Apfel, 162 F.3d 533, 539 (8th Cir. 1998).

Plaintiff's only discussion of the COVID-19 pandemic involves circumstances outside the adjudicated period. (See, Plf.'s Mem. [Docket No. 22] at 14–15). Accordingly, in the present case and based on the record now before the Court, Plaintiff cannot rely on the present circumstances of the COVID-19 pandemic after the ALJ's decision to establish that the ALJ's RFC decision was unsupported by substantial evidence. Even if the present record could be characterized as supporting Plaintiff's allegations of her immunocompromised status and the medical record contained some indication as to the present effects of the COVID-19 pandemic upon Plaintiff's purported immunocompromised status, this would be insufficient to demonstrate a disability during the time period relevant to her present claim. See, Comegys v. Chater, 105 F.3d 662 (8th Cir. 1997); Laveau v. Astrue, No. 11-cv-505 (SRN/LIB), 2012 WL 983598, at *19 (D. Minn. Feb. 14, 2012), report and recommendation adopted, 2012 WL 983630 (D. Minn. Mar. 22, 2012); Jackson v. Apfel, 162 F.3d 533, 539 (8th Cir. 1998).

The only case which Plaintiff cites in support of her immunocompromised argument is Evans v. Berryhill, No. 16-cv-2628 (D. Minn. Aug. 31, 2017). (Plf.'s Mem. [Docket No. 22] at 15). Plaintiff's reliance, however, is misplaced. In Evans, the record contained a diagnosed "panic disorder with agoraphobia" from plaintiff's treating therapist. Evans v. Berryhill, No. 16-cv-2628 Order [Docket No. 19] (D. Minn. Aug. 31, 2017). The record in Evans also contained evidence that plaintiff's agoraphobia rendered her unable to leave her home. Id. As the Evans Court noted, the record in that case patently demonstrated "that Plaintiff [was] unable to function independently outside the area of her home due to her anxiety-related agoraphobia . . . ." Id. at 18. In the present case, there is simply no such analogous evidence. As discussed above, Plaintiff fails to highlight any diagnosis or medical opinion related to her purported immunocompromised

status; in fact, she fails to highlight any medical evidence demonstrating her immunocompromised status.

Therefore, the Court finds unpersuasive Plaintiff's argument that her purported immunocompromised status combined with the present circumstances of the COVID-19 pandemic demonstrate that the ALJ's RFC decision is unsupported by substantial evidence.

### C. Substantial Evidence

Several portions of Plaintiff's memorandum, [Docket No. 22], could be liberally construed as arguing that the ALJ's RFC determination as a whole is unsupported by substantial evidence. For example, the description of the medical record in Plaintiff's memorandum addresses the record at large, and it is not specifically directed at the issues of absenteeism or Plaintiff's immunocompromised status. (See, Plf.'s Mem. [Docket No. 22] at 1–11). This theme continues even in Plaintiff's discussion of the medical records related to her alleged absenteeism. (See, Id. at 13) (discussing nightmares and flashbacks). Although her discussion of nightmares and flashbacks is also related to her absenteeism argument, when viewed in context of Plaintiff's description of the medical record as a whole, her discussion of the nightmares and flashbacks could be liberally construed as arguing the ALJ's overall decision is unsupported by the evidence in the record. In an abundance of caution, the Court will consider this argument; however, the Court finds this argument to be unpersuasive.

Even liberally construing her implied argument here, Plaintiff is merely highlighting selective evidence she believes favorable to her claim, and she asks this Court to reevaluate said evidence to reach a different conclusion than that of the ALJ when he considered that same evidence. (See, Plf.'s Mem. [Docket No. 22]). Plaintiff's argument lacks any assertion that the ALJ actually failed to consider the evidence to which Plaintiff now points. (See, Id.).

17

The Court may not, however, reverse the ALJ simply because substantial evidence supports an opposite conclusion. See, Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ, see, Woolf, 3 F.3d at 1213, because although the Court "must consider evidence that both supports and detracts from the ALJ's decision," the Court "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See, Milam, 794 F.3d at 983 (citations omitted) (emphasis added). Such is the present case now before the Court.

Plaintiff merely argues that the ALJ should have reached a different conclusion upon consideration of said evidence. Here, Plaintiff simply asks the Court to reweigh the evidence that the ALJ considered and come to a different conclusion than the ALJ; this the Court cannot do. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

To be clear, Plaintiff does not argue that the record as a whole lacks substantial evidence to support the ALJ's RFC finding. Rather, Plaintiff's implicit argument is that there is also substantial evidence in the record that also supports the opposite finding of disability. However, as already noted above, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the decision of the ALJ, then the Court must affirm the decision. See, Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009). Although Plaintiff may perceive evidence in the record which supports a finding in her favor, the record now before the Court when considered as a whole also contains substantial evidence which supports that ALJ's decision, and therefore, the Court must affirm the ALJ's decision. See, Robinson, 956 F.2d at 838; Bradley, 528 F.3d at 1115; Medhaug, 578 F.3d at 813. "The fact

that there was some medical evidence supporting [Plaintiff's] position concerning the severity of her symptoms does not mean that the ALJ's decision was not supported by substantial evidence." Adamczyk v. Saul, 817 F. App'x 287, 290 (8th Cir. 2020) (citing Fentress v. Berryhill, 854 F.3d 1016, 1021 (8th Cir. 2017)).

The Court's review of the record as a whole indicates that the ultimate decision that Plaintiff was not disabled as defined by the Social Security Administration Act during the adjudicated period was supported by substantial evidence in the record. Specifically, on the Court's review of the record as a whole, the undersigned concludes that the ALJ's decision to discount Plaintiff's subjective complaints, the ALJ's RFC determination, and his decision that jobs existed in significant numbers in the national economy which Plaintiff could perform within the RFC determination were each supported by substantial evidence in the record.

**V.  Conclusion**

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.      Plaintiff's Motion for Summary Judgment, [Docket No. 21], be **DENIED**; and

2.      Defendant's Motion for Summary Judgment, [Docket No. 23], be **GRANTED**.

Dated:  January 31, 2022                              s/ Leo I. Brisbois
                                                       Hon. Leo I. Brisbois
                                                       United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).